**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| R-BOC REPRESENTATIVES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 8433 |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| JOHN T. ("TOM") MINEMYER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

"So we beat on, boats against the current, borne back ceaselessly into the past."

F.Scott Fitzgerald, The Great Gatsby

Although recently filed, this case has a long history, *see Minemyer v. R-Boc Representatives, Inc*, 2012 WL 2155240, 4 (N.D.Ill.,2012), confirming that "[p]atent litigations are among the longest, most time-consuming types of civil actions. As of 2009, 384 patent cases had been pending in the district courts for three years or more. Moreover, the costs of patent litigation are enormous with an average patent case costing upwards of $3 million for each side." *Ohio Willow Wood Co. v. Thermo-Ply, Inc*., 629 F.3d 1374, 1376-77 (Fed.Cir. 2011)(citations omitted).

Five years ago, the defendant in this case – Mr. Minemyer – filed a patent and trademark infringement suit against the plaintiffs in this case (and others) over their infringement of his patent on plastic couplers used to join conduit through which fiber optic cable runs. That case plodded along at great expense to the parties through enumerable motions and rulings – the docket is 527 entries long and there are some 18 opinions on WestLaw – until, finally, in February 2012, a jury found that R-Boc's couplers did, indeed, infringe Mr. Minemyer's patent.

Despite the finding and even though no one named Jarndyce is involved, the case continues. Some years ago, R-Boc redesigned the offending coupler and, before the prior case went to trial, R-Boc filed the instant lawsuit – a declaratory judgment action asking that the court rule that the redesigned couplers do not infringe Mr. Minemyer's patent – the one the jury found R-Boc infringed in the earlier case – and that the patent iss invalid. Mr. Minemeyer now moves to dismiss this case, arguing that it is duplicative of the first and violates Fed.R.Civ.P. 13(a) and the prohibition against claim-splitting.

In *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 WL 1126906 (N.D.Ill. 2005), the patentee filed suit against several defendants, alleging they infringed five patents. The defendants responded with a declaratory judgment counterclaim arguing that they did not infringe and that all the claims of the patents were invalid. As the action proceeded, it seemed there was some uncertainty regarding the identity of the claims the patentee was asserting. The patentee assured the court that its asserted claims were identified in a list provided to the defendants. 2005 WL 1126906, *1-2. But, things progressed a little further and the patentee asserted some additional claims in response to an interrogatory regarding prior art. The defendant moved to strike the response, and the patentee withdrew its new claims, indicating it would assert them in a separate action. 2005 WL 1126906, *2.

The patentee then filed a separate action against three of the original defendants, charging them with infringing various claims of certain patents, including three of the five patents from the original suit. 2005 WL 1126906, *1. The defendant filed a motion to dismiss the second action. The court ruled that Fed.R.Civ.P.13(a) required the patentee to assert its new claims as compulsory counterclaims against the defendants' declaratory judgment counterclaim in the initial lawsuit. It

relied on *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed.Cir. 2003), which held that Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory. *Id.* at 938. The court in *CIVIX-DDI, supra,* also found that the patentee's tactic violated the rule prohibiting a party from splitting its claims into multiple actions when the litigant should have brought the claims in a single action. 2005 WL 1126906, *4. The court then addressed the new claims as though they had been made part of the first action, but ultimately found that the patentee would not have had the right to assert them. 2005 WL 1126906, *4-5.

*CIVIX-DDI,* however, has little to do with the situation presented by this case. R-Boc's new case allegedly concerns a different, redesigned product than was accused of infringement in the earlier case. As Mr. Minemyer concedes, both *CIVIX-DDI* cases involved the same accused product. (*Defendant's Motion to Dismiss*, at 4). That is a significant distinction because the Federal Circuit has "explicitly held that a determination of patent infringement in an infringement suit, or even an explicit determination of patent validity, does not preclude the assertion of an invalidity defense in a second action involving different products." *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1326 (Fed.Cir. 2008). The extent to which this principle is to be applied is illustrated by *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469 (Fed.Cir. 1991).

There, the first infringement action had not only resulted in a consent judgment that the accused products infringed, the alleged infringer also acknowledged that the patents in suit were "valid and enforceable in all respects." 947 F.2d at 481. Nevertheless, the Federal Circuit ruled that claim preclusion did not bar defendant's later declaratory judgment action challenging those patents' validity if the devices involved in the two suits were not "essentially the same." *Id.* at 479-480.

3

In other words, the issue of validity is "attached" so to speak, not to the patent itself but to the accused device. If the new device isn't essentially the same as the accused device in the original proceeding, the patent's validity may be revisited. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1297 (Fed.Cir. 2001)("the right to [pursue the invalidity defense in a second litigation] depends on whether the underlying cause of action is different from the one brought earlier, which in turn depends on whether the . . . devices are essentially the same, or if any differences between them are merely colorable."); *Ecolab, Inc. v. Paraclipse, Inc*., 285 F.3d 1362, 1376-77 (Fed.Cir. 2002)(same).[1]

The Federal Circuit has explained this state of affairs by saying that issue preclusion is generally not applicable in patent validity judgments because such a judgment does not mean a patent is valid *per se*, but that the accused infringer failed to carry its burden of proving invalidity. *In re Construction Equipment Co.*, 665 F.3d 1254, 1256 (Fed.Cir. 2011). The same does not hold true, however, for the other side of the coin. "[O]nce a court determines that a patent is invalid in a proceeding where the patent owner had a full and fair opportunity to adjudicate the issue, the patent owner is collaterally estopped from relitigating the issue in a future case." *Eli Lilly and Co. v. Sicor Pharmaceuticals, Inc*., 426 Fed.Appx. 892, 893-894 (Fed.Cir. 2011).

Accordingly, R-Boc's declaratory judgment claims were not compulsory counterclaims in the earlier case because that case did not involve the new, purportedly redesigned coupler that is involved here. Similarly, R-Boc's current suit does not amount to claim-splitting as occurred in

---

[1] This is to be contrasted with the situation where an injunction issues *Minemyer v. R-Boc Representatives, Inc.*, 2012 WL 2423102, *2 (N.D.Ill. 2012)(the Federal Circuit had occasion to set forth the rather complex process to be followed in a contempt proceeding to determine whether a device is no more than colorably different in situations like this one) INSERT

*CIVIX-DDI.* [2]

## CONCLUSION

The defendants' motion to dismiss [#20] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 7/16/12

---

[2] Mr. Minemyer contends that this question was decided by the trial in the earlier case but, as was discussed in the ruling on Mr. Minemyer's Post-Trial Motion for a Permanent Injunction, the surface of this issue has not even been scratched. [#523, at 3-5].